/

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

CASSANDRA GOODEN, Civil No. 02-835 (JRT/SRN)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

VILLAGE GREEN MANAGEMENT CO., a Michigan Corporation,

Defendant.

---

Stephen L. Smith, THE LAW FIRM OF STEPHEN L. SMITH, 700 Lumber Exchange Building, 10 South Fifth Street, Minneapolis, MN 55402, for plaintiff.

David J. Duddleston and Paul A. Egtvedt, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, 150 Fifth Street Towers, Suite 2800, 150 South Fifth Street, Minneapolis, MN 55402, for defendant.

Plaintiff Cassandra Gooden filed this action against her former employer, Village Green Management Company ("Village Green"), pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Minnesota Human Rights Act, Minn. Stat. §§ 363.01 *et seq.*, alleging employment discrimination due to race. Defendant has moved for summary judgment and to compel arbitration. For the reasons set forth below, the Court grants the defendant's motion for summary judgment to the extent that the motion seeks an order compelling arbitration and denies the motion in all other respects. The Court

FILED NOV 1 5 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

also stays this action pending the arbitration and will retain jurisdiction for any appeal from the arbitration proceedings.

## FACTUAL BACKGROUND

Plaintiff held several positions at Village Green. She was hired as a leasing consultant on October 18, 2000 and promoted to assistant property manager sometime in February of 2001. She was again promoted on November 27, 2001, to interim property manager. On January 3, 2002, plaintiff was demoted, and on February 1, 2001, she was terminated.

Plaintiff alleges that she was demoted, and ultimately terminated, because of her race. She asserts that she was treated differently than both her predecessor and her successor, both of whom are white. Specifically, she claims that her predecessor and successor were given more training and a full support staff, and were not required to meet the same goals. She further argues that when other similarly situated property managers failed to meet similar goals, they were not demoted or terminated.

The employment application signed by plaintiff contained an arbitration clause that required any claims to be submitted to binding and final arbitration before the American Arbitration Association. Fees and expenses were to be shared equally. A second arbitration agreement was found in the associate handbook, the receipt of which plaintiff acknowledged by signing an "acknowledgment of associate handbook." The acknowledgment contained an arbitration clause that provided that "any dispute or claim . . . must be asserted . . . within six (6) months . . . and will be subject to the exclusive

jurisdiction of the American Arbitration Association."[1] The agreements do not contain severability clauses, which typically provide that if a portion of the agreement is found to be unenforceable, the remainder will be enforced.

## THE PARTIES' POSITIONS

In support of its motion, defendant asserts that arbitration agreements like the one at issue are enforceable under both the Federal Arbitration Act and the Minnesota Arbitration Act. Defendant claims that plaintiff can effectively vindicate her statutory cause of action in an arbitration forum, as she agreed to do in both her employment contract and the employee handbook.

Plaintiff responds that the arbitration agreement should not be enforced for several reasons. First, she argues it is a contract of adhesion. Second, she asserts that the fee splitting provision makes the entire arbitration agreement unenforceable. Third, plaintiff argues that the agreement inappropriately reduces the limitations period for her claims to six months. Finally, plaintiff argues that the Federal Arbitration Act does not apply unless defendant meets its burden of proving that her employment contract involved interstate commerce.

---

[1] Plaintiff signed the "Acknowledgment of Associate Handbook" on October 10, 2000. This form expressly "supersedes any and all prior verbal or written policies, statements, understandings and/or agreements . . . ." (Egtvedt Aff. at Ex. 3). A plain language reading of the handbook suggests that the arbitration agreement in the handbook replaces the arbitration agreement in the application, which was signed September 28, 2000. The arbitration clause in the handbook contains no reference to fee splitting. The parties do not argue that the fee-splitting provision in the application does not apply. Moreover, the rules of the American Arbitration Association provide for fee-splitting, and where the arbitration agreement is silent as to costs, it is reasonable to defer to the rules of the Association.

Defendant responds that plaintiff failed to show that the arbitration clause was one of adhesion and claims that plaintiff has not established that the fee-splitting provision is financially prohibitive. Defendant also notes that it has offered to pay the cost of plaintiff's share of the arbitration fees, exclusive of attorney's fees, and proposes severing the fee-splitting provision if it is found unenforceable. Because plaintiff filed her actions well within the six-month time frame allowed in the arbitration agreement, defendant claims she has no standing to argue that the six-month provision invalidates the arbitration clause. Finally, defendant offers evidence that it is involved in interstate commerce, and therefore the FAA applies.

## ANALYSIS

### I. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not merely rest upon allegations or denials in its pleadings, instead it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

Plaintiff's claim that the arbitration agreement and/or employee handbook are contracts of adhesion raises fact questions. The interpretation of the of the arbitration agreement raises issues of law.

## II. The Arbitration Agreement

### A. Contract of Adhesion

Minnesota courts define a contract of adhesion as one "drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." *Schlobohn v. Spa Petite, Inc.*, 326 N.W.2d 920, 924 (Minn. 1982). Two factors are considered in determining if a particular contract is one of adhesion: (1) was the contract a result of superior bargaining power of one of the parties and (2) was the service involved a public necessity? *Personalized Marketing Service, Inc. v. Stotler & Co.*, 447 N.W.2d 447, 452 (Minn. Ct. App. 1989).

Employment contracts do not fit easily into this understanding of contracts of adhesion. *See Guidant Sales Corp. v. George*, 2001 WL 1491317 at *6 (D. Minn. 2001) (recognizing that the authority relating to contracts of adhesion have no application to an agreement between private parties); *but see Johnson v. Hubbard Broadcasting, Inc* , 940 F. Supp. 1447, 1455 (D. Minn. 1996) (discussing possibility of contract of adhesion in employment contract, but refusing to find contract of adhesion because employer's actions "simply fail to amount to the use of overwhelming economic power necessary to invalidate the Agreement."). Despite the reluctance of courts to label employment contracts as ones of adhesion, the unique nature of such contracts should subject them to special scrutiny. Employment contracts are typically offered on a "take-it or leave-it" basis; they often are drafted entirely by employers and offered for employees to sign as a condition of employment. Contracts signed under such conditions are susceptible to the presence of unconscionable terms.

However, plaintiff offers little evidence of the "overwhelming economic power," fraud or refusal to negotiate that is required before vitiating an employment contract on the basis of inequality in bargaining power. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context"). Specifically, plaintiff offers no evidence regarding her job search or her financial resources before she found the job at Village Green, nor does she offer evidence that Village Green refused to negotiate terms of her contract. Considering the state of the law concerning contracts of adhesion in the employer-employee context, the

Court cannot find on this record that plaintiff has raised a sufficient factual issue that the contract at issue was one of adhesion.

**B. Federal Arbitration Act**

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Substantively, the FAA requires a court to enforce a written arbitration agreement as it would any other contract. 9 U.S.C. § 2 ("A written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

The Supreme Court recently resolved any question concerning the FAA's applicability to arbitration agreements in the employment context when it held that, with limited exception, arbitration agreements covering employment-related claims fall within the FAA's provisions. *Circuit City Stores, Inc. v. Adams,* 121 S. Ct. 1302, 1311 (2001) (holding that in the employment context "only contracts of employment of transportation workers" are exempted from the FAA's coverage).

Defendant has shown that it is involved in interstate commerce, and it is clear that the FAA governs the arbitration agreement at issue in this case. It is also clear that the present complaint of unlawful discrimination falls within the terms of the arbitration agreement. The dispute turns on whether the arbitration agreement, in its entirety, is

enforceable. Specifically, the Court must determine if either the fee-splitting provision or the abridged statute of limitations renders the entire arbitration agreement unenforceable.

### C. Fee-Splitting Provision

The arbitration agreement provides that the parties shall share the cost of arbitration equally. Several circuit courts have disapproved of fee-splitting provisions similar to the provision at issue here. *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997); *Shankle v. B-G Maintenance of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999). In fact, this Court recently held an arbitration agreement unenforceable, in part because it contained a similar fee-splitting provision. Such provisions may be found to be unenforceable because the high cost of arbitration can prevent plaintiffs from asserting their claims. *See Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 (2000) (noting that large arbitration costs could preclude a litigant from effectively vindicating federal statutory rights).

Plaintiff has shown that she is an unemployed, single mother, and that she and her child are living on a fixed income, and limited savings. Plaintiff, in an affidavit in opposition to defendant's summary judgment motion, states that she receives $389 per week in unemployment, and pays $890 per month in rent. She also notes she and her son are without health or dental insurance. Although courts in other circuits have demanded more proof of financial condition, *Blair v. Scott Specialty Gases,* 283 F.3d 595, 608 (3rd Cir. 2002), plaintiff here clearly would face a hardship if forced to split costs of arbitration. Plaintiff estimates that the cost of arbitrating could easily amount to several thousand dollars. That figure includes a nonrefundable filing fee of $500, plus

compensation for the neutral at approximately $600 - $1,000 per day. Plaintiff's estimate is a reasonable reflection of the cost of arbitration.

The Court finds that plaintiff has sufficiently demonstrated that the fee-splitting provision would result in financial hardship to her and impact her ability to assert her statutory claims. The provision is therefore unenforceable.

### D. Severability

Although the fee-splitting clause is unenforceable, this does not necessarily render the entire arbitration agreement void. Minnesota law allows for severability of contract terms. *Harford Accident & Indemnity Co. v. Hans Dahl* , 278 N.W. 591 (Minn. 1938); 8 Dunnell Minn. Digest, § 3.07 ("Where a contract is illegal only in part and the illegal part is severable, the remainder will be enforced."). Other courts have severed similar fee splitting provisions, while upholding the arbitration agreements, at least where the contract at issue had a severability clause. *See Carter v. Countrywide Credit Industries, Inc.*, 189 F. Supp. 2d 606, 621 (N.D. Texas 2002) (granting motion to compel arbitration, but holding fee-splitting agreement void and ordering defendant to pay all arbitration costs where severability clause provided that "[i]f any provision of this Agreement . . . is adjudged to be void or otherwise unenforceable . . . adjudication shall not affect the validity of the remainder of the Agreement or the Code." *Id.* at 620 (internal citations omitted)).

An unenforceable clause can be stricken from an agreement regardless of the explicit inclusion of a severability clause. Although the presence of a severability clause has been significant in other cases, the absence of such a clause has been held to not

prevent the Court from severing the fee-splitting provision. *See e.g., Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001) (relying on severability clause but also holding that "the essence of the contract . . . is an agreement to settle their employment disputes through binding arbitration."); *Beletsis v. Credit Suisse First Boston, Corp.*, 2002 WL 2031610 *6 (S.D.N.Y. 2002) (severing fees clause without mention of severability clause in arbitration agreement); *Spinetti v. Service Corp. Int'l*, 2001 WL 1781921 (W.D. Pa. 2001) (severing clause despite lack of severability clause). The Court finds that the fee-splitting provision is severable, and that the remainder of the agreements are enforceable.

Severing the fee-splitting provision does not answer the question of who pays the relatively high cost of arbitration. In this case, however, defendant has offered to pay plaintiff's share of the arbitration costs, exclusive of attorney's fees. The Court will order defendant to pay plaintiff's share of arbitration costs.[2] *See Carter v. Countrywide Credit Indus., Inc.* 189 F. Supp. 2d 606, 621 (N.D. Texas 2002) (severing fee-splitting provision and ordering defendants to pay all arbitration costs).

## E. Statute of Limitations

The agreement expressly attempts to limit the statute of limitations to six months: "I understand and agree that any dispute or claim I may have arising in any way out of my employment by the Company and/or any separation thereof regardless of whether based upon theories of contract, civil rights or other, must be asserted by me within six

---

[2] Plaintiff's share of arbitration costs does not include plaintiff's attorney's fees. However, if the arbitrator finds in favor of plaintiff, the arbitrator is authorized by statute to award attorneys fees to plaintiff.

(6) months of the occurrence(s) complained of . . . ." (Egtvedt Aff. at Ex. 3 (Acknowledgement of receipt of associate handbook)).

Minnesota law clearly allows a longer statute of limitations for civil rights claims. The statute of limitation for Minnesota Human Rights violations is one year. Minn. Stat. § 363.06, subd. 3. Similarly, an aggrieved employee has six years to file complaints under 42 U.S.C. § 1981. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662 (1987) (holding that in an action under 42 U.S.C. § 1981, federal court should select the most appropriate or analogous state statute of limitations because § 1981 does not contain its own statute of limitations); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 617 (8th Cir. 1995) (holding Minnesota's personal injury limitations statute applicable to §§ 1981 and 1983 claims).

The Court notes that in an employment discrimination case such as this, it is impermissible to restrict by a contract an established statute of limitations, because such an agreement limits the statutory remedies created by Congress. *Bailey v. Ameriquest Mortgage Co.*, 2002 WL 100391 (D. Minn. Jan. 23, 2002) (collecting cases); *Paladino v. Avnet Computer Tech. Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998). However, because all evidence in the record indicates that plaintiff filed her claim well within the six-month period, the Court need not address this issue at this time, and will do so only if there is a claim that plaintiff failed to bring her claim within the statutory period.

## III. Defendant's Request For Leave To File A Supplemental Affidavit

Defendant requested leave to file a supplemental affidavit on August 8, 2002. Plaintiff has not opposed the motion, and it is granted.

**ORDER**

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's request for leave to file a supplemental affidavit [Document No. 15] is **GRANTED**;

2. Defendant's motion for summary judgment, to the extent it seeks to compel arbitration, [Document No. 4] is **GRANTED** and defendant is ordered to pay the costs of arbitration;

3. Defendant's motion for summary judgment [Document No. 4] is **DENIED** in all other respects; and

4. The case shall be **STAYED** pending the outcome of the arbitration; and the parties shall submit a joint letter to the Court following the arbitration indicating whether there are further issues for the Court to resolve.

DATED: Nov. 15, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge